IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA (UAW); and DOLORES
GROMALSKI and PABLO GOMEZ, for
themselves and others similarly situated,

    Plaintiffs,

v.

VISTEON CORPORATION; VISTEON
SYSTEMS, LLC; VISTEON CARIBBEAN,
INC.; VISTEON SYSTEMS LLC HEALTH
AND WELFARE BENEFIT PLAN FOR
HOURLY EMPLOYEES-NORTH PENN
LOCATION; and VISTEON CARIBBEAN,
INC. EMPLOYEE GROUP INSURANCE
PLAN,

    Defendants.

Civil Action No. 13-1742-RGA

## MEMORANDUM OPINION

Susan E. Kaufman, Esq., COOCH and TAYLOR P.A., Wilmington, DE; John G. Adam, Esq., LEGGHIO & ISRAEL, P.C., Royal Oak, MI.

    Attorneys for Plaintiffs.

Laura Davis Jones, Esq., James E. O'Neill, Esq., PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE; Andrew B. Bloomer, Esq., Catherine L. Fitzpatrick, Esq., R. Allan Pixton, Esq., KIRKLAND & ELLIS LLP, Chicago, IL; Heather A. Bloom, KIRKLAND & ELLIS LLP, Washington, DC.

    Attorneys for Defendants.

July 9, 2015

**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendants' Motion for Judgment on the Pleadings (D.I. 90), which seeks judgment as a matter of law on Plaintiffs' First Amended Complaint (D.I. 4). Plaintiffs' two-count Complaint asserts a claim for breach of contract and a claim for an ERISA violation under 29 U.S.C. §§ 1132(a)(1)(B) and (3).

## I. BACKGROUND

The Visteon entities (hereinafter, "Visteon") filed voluntary petitions for chapter 11 bankruptcy relief in the United States Bankruptcy Court for the District of Delaware on May 28, 2009. (*See* Bankr. Case No. 09-11786). Visteon is a manufacturer of automotive parts. (D.I. 91 at 4). Plaintiff UAW is the collective bargaining representative for Visteon's workers and retirees at the "North-Penn Plant" in Pennsylvania and the "Caribbean Plant" in Puerto Rico. (*Id.*). The individually named plaintiffs, Gromalski and Gomez, are retired workers of Visteon's North-Penn and Caribbean plants, respectively, and purport to assert claims on behalf of an entire class of similarly situated workers. For convenience, I will refer to Plaintiffs as "the UAW."

In June 2009, Visteon moved the Bankruptcy Court for permission to terminate certain post-employment health care and life insurance benefits ("OPEB") provided to some of its retirees. (D.I. 92, Ex. F). The UAW and the IUE[1]—another collective bargaining unit that represents approximately 2,100 retirees of Visteon's two Indiana plants—opposed the motion. The parties took discovery and presented evidence to the Bankruptcy Court over the course of a two-day hearing. (D.I. 92, Ex. A at VIST-2). On December 22, 2009, the Bankruptcy Court issued an order (the "Termination Order") allowing Visteon to terminate the OPEB. (*Id.*). It

---

[1] The Industrial Division of the Communications Workers of America.

1

reasoned that because the various benefit plans did not vest the OPEB, 11 U.S.C. § 363(b)(1), rather than 11 U.S.C. § 1114, governed the termination of the benefits. (*Id.* at VIST-3). Applying the § 363(b)(1) standard, the Bankruptcy Court found that terminating the OPEB was an exercise of reasonable business judgment and granted Visteon's motion.

IUE appealed from the Termination Order; UAW did not. This Court affirmed the Termination Order, but granted a limited one-month stay so that the IUE could seek an expedited appeal. On further appeal, the Third Circuit found that the Bankruptcy Court erred in applying 11 U.S.C. § 363 rather than 11 U.S.C. § 1114 to Visteon's motion to terminate. *See In re Visteon Corp.*, 612 F.3d 210, 218–19 (2010) [hereinafter *Visteon I*]. *Visteon I* reversed this Court's order affirming the Bankruptcy Court's Termination Order. *Id.* at 237.

On remand, UAW moved to reinstate the OPEB pursuant to *Visteon I*. (D.I. 92, Ex. K at VIST-110). The Bankruptcy Court granted this motion in part, ordering Visteon to reinstate the OPEB for certain UAW retirees (the "Reinstatement Order").[2] (D.I. 92, Ex. E at ¶ 1). Visteon appealed from that order, arguing that UAW could not reap the benefits of an appeal to which it was not a party.[3] This Court agreed with Visteon and reversed the Bankruptcy Court's Reinstatement Order as applied to UAW. (C.A. No. 10-918, D.I. 18). The Third Circuit affirmed this Court's decision. *In re Visteon Corp.*, 579 F. App'x 121, 123 (3d Cir. 2014)

---

[2] The Bankruptcy Court had exempted from its Termination Order a class of workers in Visteon's North Penn plant that either had retired or would retire during the term of an April 2, 2005 collective bargaining agreement (the "North Penn carve-out"). (D.I. 92, Ex. A at ¶ 1). After the Termination Order—but before the Third Circuit's reversal in *Visteon I*—Visteon and the North Penn carve-out retirees negotiated the North Penn Closure Agreement. This settlement resolved all disputes, including the OPEB issue, between Visteon and the retirees bound by the April 2, 2005 agreement.

[3] The UAW also cross-appealed from the Termination Order with respect to the North Penn carve-out. The Third Circuit affirmed this carve-out, explaining that the Closure Agreement fully settled the OPEB issue for those exempted retirees. *In re Visteon Corp.*, 579 F. App'x 121, 130 (2014). Due to the Closure Agreement, the retirees subject to the North Penn carve-out are not implicated in this dispute.

2

[hereinafter *Visteon II*]. That Court reasoned that the Termination Order became final as to UAW once it failed to appeal from that order. *Id.* at 129. Despite the subsequent reversal on IUE's appeal, the Court held that UAW was bound by the Termination Order. *Id.*

On October 1, 2010, Visteon emerged from bankruptcy. (D.I. 93 at 5). Visteon's confirmed plan of reorganization ("the Plan") "reserved [Debtors'] rights to terminate all OPEB upon the Effective Date, subject to the right of any affected employee or retiree or representative of such employee or retiree to contest the lawfulness of such termination." (D.I. 94, Ex. A at Pl-2). On October 19, 2010, Visteon sent notice to UAW retirees that it would terminate healthcare benefits on November 1, 2010. (*Id.*, Ex. B at Pl-3). This prompted UAW to initiate this present action by filing a two-count Complaint in the United States District Court for the Eastern District of Michigan. (D.I. 1; *as amended*, D.I. 4). On October 22, 2013, the Michigan Court issued an opinion and order transferring the case to this Court. (D.I. 60). Visteon subsequently moved for Judgment on the Pleadings in this Court. (D.I. 90). The parties have extensively briefed the issues and it is now ripe for resolution.[4] (*See* D.I. 91, 93, 95).

## II. PARTIES' CONTENTIONS

Visteon asserts that UAW's claims are barred by issue preclusion and claim preclusion. (D.I. 91 at 3). It contends that the Bankruptcy Court's finding in the Termination Order that the OPEB were not vested is final for purposes of res judicata. (*Id.*). Visteon argues that this settled issue of fact forecloses UAW's two causes of action and entitles Visteon to judgment on the pleadings. (*Id.*).

---

[4] UAW requested oral argument on Visteon's Motion for Judgment on the Pleadings. (D.I. 97). The Court finds that the parties sufficiently set forth their respective arguments in the briefs and thus denies UAW's request. *See* D. Del. LR 7.1.4.

3

UAW responds that Visteon's res judicata defenses are meritless for four reasons: (1) Visteon unsuccessfully raised these defenses in two prior instances, thus establishing the law-of-the-case, (2) Visteon's Plan reserved UAW's rights to reassert the two claims in its Complaint, (3) the issue of "vesting" was not essential to the Bankruptcy Court's Termination Order, and (4) the present claims against Visteon arose out of separate conduct that is distinct from the issue litigated within the bankruptcy case. (D.I. 93 at 1–2).

## III. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A moving party is entitled to judgment on the pleadings if he or she "clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008). In ruling on this motion, "[a] district court [i]s required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to plaintiff, the nonmoving party." *Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1004 (3d Cir. 1991).

Res judicata encompasses two distinct doctrines known as claim preclusion and issue preclusion. *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002). "Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). "Claim preclusion requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *CoreStates Bank, N.A. v. Huls Am., Inc.*,

4

176 F.3d 187, 194 (3d Cir. 1999). On the other hand, "[i]ssue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. at 748–49. "For a party to be estopped from relitigating an issue, the following elements must be present: (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment." *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997).

## IV. DISCUSSION

### A. Claim Preclusion

Visteon first argues that claim preclusion bars both of UAW's causes of action. (D.I. 91 at 11). UAW responds that the Michigan Court already rejected Visteon's claim preclusion defense. (D.I. 93 at 10, 12). Therefore, UAW contends, the law-of-the-case doctrine prevents Visteon from re-litigating claim preclusion. Visteon responds that the law-of-the-case doctrine yields when a court reverses an earlier decision, which occurred here. (D.I. 95 at 7–8). Visteon argues that the Third Circuit's subsequent decision in *Visteon II* provides intervening law that justifies departing from the law-of-the-case doctrine. (*Id.* at 7–8).

"The doctrine of the law of the case . . . limits relitigation of an issue once it has been decided." *In re Cont'l Airlines, Inc.*, 279 F.3d at 232. The Michigan Court already addressed Visteon's claim preclusion defense. (*See* D.I. 60 at 5) ("[T]he sole issue before the Court is whether the confirmed plan entered by the Delaware Bankruptcy Court reserved the claims raised by Plaintiffs in their First Amendment Complaint."). That Court concluded that "based

5

upon the express language of the 8/31/2010 Confirmed Plan, the Plaintiff's Claims related to terminating OPEB obligations, were reserved." (*Id.* at 6). After the Michigan Court transferred this action, this Court reaffirmed that finding. (D.I. 77 at 5) ("There is nothing in Third Circuit case law to support a reversal of the Michigan Court's decision."). Revisiting for a third time whether the Plan preserved UAW's claim is precisely the type of judicial inefficiency the law-of-the-case doctrine seeks to prevent. *See In re Cont'l Airlines, Inc.*, 279 F.3d at 233.

Visteon claims that *Visteon II* provided intervening law that rendered the Michigan Opinion "clearly erroneous." (D.I. 95 at 8). In its view, the Third Circuit's reversal should reopen the claim preclusion defense. (*Id.*). The Court disagrees. Visteon's argument rests on the mistaken inference that *Visteon II* recognized that the Termination Order permitted Visteon to end the OPEB *post*-bankruptcy. (*Id.*). The Termination Order was not so broad. It only granted Visteon the authority to end the OPEB during bankruptcy. The Third Circuit specifically noted that "Visteon's post-bankruptcy termination is not at issue in this appeal; it is the subject of separate litigation that was initiated in the Eastern District of Michigan." *Visteon II*, 579 F. App'x at 124 n.1. That Court made no finding that renders the Michigan Opinion clearly erroneous. For this reason, the Court has no basis to reconsider Visteon's reasserted defense of claim preclusion. The Court accepts as law-of-the-case that the Plan preserved UAW's present claims. Visteon's claim preclusion defense must fail.

### B.  Issue Preclusion

Visteon argues that the Bankruptcy Court conclusively determined in the Termination Order that the OPEB were not vested; therefore, issue preclusion bars UAW from rearguing this point. (D.I. 91 at 16). UAW counters by asserting that the Michigan Court (and this Court) already rejected the issue preclusion defense, thus establishing the law-of-the-case. (D.I. 93 at

6

14). UAW contends that Visteon's Plan reserved the right to challenge the vesting issue. (*Id.*). UAW maintains that issue preclusion is also improper because the Bankruptcy Court did not analyze the vesting issue under the proper standard of proof. (*Id.* at 16). UAW finally disputes whether the fourth element of issue preclusion is satisfied because the Bankruptcy Court's determination of the OPEB vesting issue was not "essential" to its overall conclusion. (*Id.* at 15).

### 1. The Law-of-the-Case Doctrine

Though the Michigan Court settled the law-of-the-case on the claim preclusion defense, it did not do so with respect to Visteon's issue preclusion defense. In its Memorandum transferring this case, the Michigan Court noted that "the *sole issue* before the Court is whether the confirmed plan entered by the Delaware Bankruptcy Court reserved the *claims* raised by Plaintiffs in their First Amendment Complaint." (D.I. 60 at 5) (emphasis added). Claim preclusion and issue preclusion are two distinct doctrines. *See In re Cont'l Airlines, Inc.*, 279 F.3d at 232. The Michigan Court did not address issue preclusion.

This Court, however, did briefly address issue preclusion in its July 2014 Memorandum, remarking that "it appears that the central crux to the Plaintiff's claims is whether their retiree health care benefits were vested . . . [t]herefore, it would make sense that if a claim is not precluded, subsidiary issues relating to the particular claim are not precluded as well." (D.I. 77 at 5). Subsequent to this Memorandum, the Third Circuit in *Visteon II* clarified that *Visteon I* "did not vacate any of [the Bankruptcy Court's] factual findings regarding whether the OPEB were vested . . . ." *Visteon II*, 579 F. App'x at 124.

Given the Third Circuit's clarification on the OPEB vesting issue, the Court finds it appropriate to reconsider its earlier position on issue preclusion. "A court has the power to

7

revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (internal quotations omitted). If persuasive intervening authority convinces a court that it would be perpetuating an error by adhering to an earlier position, a court can depart from the law-of-the-case doctrine. *See Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 1990 WL 61787, at *3 (D.N.J. May 9, 1990). The Court finds that such circumstances are present here and will not apply the law-of-the-case doctrine to Visteon's issue preclusion defense.

### 2. Chapter 11 Plan

UAW also argues that Visteon's issue preclusion defense fails because the ERISA claims are preserved by the reservation of rights clause in the Plan. (D.I. 93 at 10). It contends that "[r]eserved claims are not subject to *res judicata*[]" and cite various decisions of several Courts of Appeal for support. (*Id.*). UAW misconstrues the breadth of a chapter 11 plan's reservation of rights clause. A reservation of rights clause prevents *the plan itself* from precluding certain claims and issues, but it does not retroactively unwind the preclusive effects of judgments issued prior to the plan. "[A] confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989). The language in the Plan specifically incorporates this limitation:

> The Reorganized Debtors reserve their rights to terminate all OPEB upon the Effective Date . . . . All parties reserve any Claims or arguments they may have regarding the Reorganized Debtors' claimed right to terminate OPEB, *including arguments by the Reorganized Debtors that the factual findings and legal conclusions of the Bankruptcy Court and Federal District Court for the District of Delaware relating to OPEB . . . are binding and have res judicata, collateral estoppel, and preclusive effect* in any proceeding regarding such termination . . . .

8

(D.I. 94, Ex. A at Pl-2) (emphasis added). Visteon's issue preclusion defense calls into question the effect of the Bankruptcy Court's Termination Order—not the effect of the Plan. Therefore, the reservation of rights clause in the Plan is immaterial to the merits of the issue preclusion defense.

### 3. The Bankruptcy Court's Standard of Proof

UAW argues that the Bankruptcy Court's findings were not sufficiently clear to establish issue preclusion. It argues that the Bankruptcy Court found that the OPEB were vested under "unspecified state law" and did not identify the "standards and proof burdens" upon which it relied. (D.I. 93 at 17). UAW maintains that issue preclusion "may be defeated by shifts in the burden or persuasion of by changes in the degree of persuasion required." (*Id.* at 16) (citations omitted).

UAW does not identify any erroneous standard or burden of proof that the Bankruptcy Court employed in its Termination Order. Contrary to UAW's assertion, the Bankruptcy Court did not find that the OPEB were vested "under state law." (*Id.* at 17). The Bankruptcy Court's mention of "state law" at its bench ruling referred to Visteon's "right to terminate," not whether the OPEB were vested. (D.I. 92, Ex. B at VIST-10). Although "doubts about [issue preclusion] should usually be resolved against its use[,]" the Bankruptcy Court's decision on the OPEB vesting issue was not ambiguous. *Witkowski v. Welch*, 173 F.3d 192, 206 (3d Cir. 1999). The Termination Order flatly stated that "[t]he OPEB provided under the Visteon Corporation Plan, the Connersville and Bedford Plan, the North Penn Plan, and the Caribbean Plan are not vested." (D.I. 92, Ex. A at ¶ 1). The parties specifically argued whether the OPEB were vested under the appropriate ERISA standard. (*See id.*, Ex. F at ¶¶ 53–58, Ex. G at ¶¶ 29–31). The decision on

9

this issue established the core of the Bankruptcy Court's reasoning to grant Visteon's motion to terminate. The Court finds no merit to UAW's argument.

### 4. Elements of Issue Preclusion

The first element of issue preclusion requires that the issue must be the same as the one raised in the prior action. *CoreStates Bank, N.A.*, 176 F.3d at 194. There is no doubt that the Bankruptcy Court addressed the OPEB vesting issue in its Termination Order. (D.I. 92, Ex. A at ¶ 1; *see also Visteon II*, 579 F. App'x at 124 ("[W]e did not vacate any of [the Bankruptcy Court's] factual findings regarding whether the OPEB were vested . . . .")).

The second element requires that the parties must have actually litigated the issue. *CoreStates Bank, N.A.*, 176 F.3d at 194. There is ample evidence to support the conclusion that the parties actually litigated the OPEB vesting issue. The majority of the parties' substantive briefing prior to the Termination Order focused on this issue. (*See* D.I. 92, Ex. F at ¶¶ 53–58, Ex. G at ¶¶ 29–31). Visteon's Termination Motion specifically analyzed the relevant language from the ERISA-governed benefit plans, argued that this language did not create a vested right to welfare benefits under the prevailing Third Circuit law, and concluded that Visteon could terminate the welfare benefit rights at any time. (*Id.*, Ex. F at ¶¶ 53–58). The Bankruptcy Court provided for "discovery, including interrogatories, document requests, and depositions. . . . [and the parties] exchanged information as well as witness and exhibit lists." (*Id.*, Ex. A at VIST-2). The Bankruptcy Court then "conducted a hearing on the Motion on August 13 and 14, 2009, at which the UAW, the IUE-CWA and the Sponsoring Debtors appeared, testimony was taken and evidence presented, and the Court heard substantial arguments." (*Id.*). The Court is convinced that the parties actually litigated this issue.

10

The third element of issue preclusion requires that a court previously decided the issue in a valid and final judgment. *CoreStates Bank, N.A.*, 176 F.3d at 194. This element is easily satisfied. *Visteon II* explained that UAW's failure to appeal the Termination Order reduced that order to a final judgment. *See Visteon II,* 579 F. App'x at 129 ("The order of the Bankruptcy Court terminating OPEB was undoubtedly final, subject to immediate appeal, and binding absent an appeal.").

The final element requires that the issue must have been essential to the prior judgment. *CoreStates Bank, N.A.*, 176 F.3d at 194. UAW argues that the vesting issue was not essential to the Bankruptcy Court's Termination Order because the Third Circuit later reversed the Bankruptcy Court's decision to terminate the OPEB under 11 U.S.C. § 363. (D.I. 93 at 15). In UAW's view, an issue of fact cannot be "essential" if the legal conclusion drawn from that issue is later reversed.[5] (*Id.*). The Court disagrees. The Bankruptcy Court first found as a matter of fact that the OPEB were not vested. (D.I. 92, Ex. A at VIST-8). It then reasoned that § 1114 could not apply because it would restrict Visteon's non-bankruptcy contract rights. (*Id.*). Therefore, it reasoned, § 363(b) must govern the termination of those benefits during bankruptcy. (*Id.*). Despite the fact that the Third Circuit later reversed the Bankruptcy Court's legal reasoning, it did not upset the preceding step in the logical chain:

> We held that Visteon could not terminate retiree benefits without employing the special procedures of § 1114. We only vacated the Bankruptcy Judge's legal determination that § 1114 did not apply; we did not vacate any of his factual findings regarding whether the OPEB were vested, or opine on Visteon's right to unilaterally terminate OPEB once it emerged from bankruptcy.

*Visteon II*, 579 F. App'x at 124.

---

[5] It bears repeating that nothing was "reversed" as to the UAW. The Court of Appeals' decision in the IUE appeal showed that the Bankruptcy Court's analysis would not have withstood a timely appeal, but there was no timely appeal.

11

In *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 253 (3d Cir. 2006), the Third Circuit reviewed whether "independently sufficient alternative findings" could satisfy the "essential" element for issue preclusion. *Id.* at 251. Because the lower court made two findings that were independently sufficient to support its ultimate decision, the appellant argued that neither finding was "essential" to that judgment. *Id.* The Third Circuit agreed with the approach of the First Restatement of Judgments, which extended issue preclusion to the finding on each alternative issue. *Id.* at 254. The Third Circuit reasoned that each "determination that is independently sufficient to support a court's judgment is not incidental, collateral, or immaterial to that judgment, and it is reasonable to expect that such a finding is the product of careful judicial reasoning." *Id.* (internal citations and quotations omitted). The Court further opined that "[d]enying preclusive effect to a finding that would support a court's judgment merely because the case was disposed of on other grounds as well would result in the inefficient use of private and public litigation resources." *Id.* at 253.

That Court explained that the "essential" requirement is "rooted in principles of fairness" because issues that the court and parties view as necessary to a judgment will be litigated vigorously and receive close judicial attention. *Id.* at 250. These principles are evident in this case. The parties' primary dispute regarding the motion to terminate was whether the OPEB were vested, and accordingly, whether § 363(b) or § 1114 applied. (*See* D.I. 92, Ex. F at ¶¶ 53–69, Ex. G at ¶¶ 1–34). The Bankruptcy Court's conclusion that § 363(b) permitted Visteon to terminate the OPEB rested solely on its factual finding that the OPEB were not vested. (*See* D.I. 92, Ex. B at VIST-7–8). This factual finding was the "necessary ingredient" for its decision to grant the termination motion. *Peloro v. United States*, 488 F.3d 163, 176 (3d Cir. 2007) (finding that an issue satisfies the "essential" test if it is the necessary ingredient to the court's ultimate

decision). Revisiting the Bankruptcy Court's carefully reasoned decision on this issue would waste judicial resources, an inefficiency that this element of the issue preclusion test seeks to avoid. *See Jean Alexander Cosmetics, Inc.*, 458 F.3d at 253. The Court concludes that the OPEB vesting issue was essential to the Bankruptcy Court's judgment.

The OPEB vesting issue satisfies all four elements of issue preclusion. The Court finds that UAW is precluded from rearguing this issue of fact.

### C. Judgment on the Pleadings

The Court must now determine if the preclusive effect of the OPEB vesting issue entitles Visteon to judgment on the pleadings. UAW's Complaint asserts two counts: (1) breach of labor contracts, and (2) wrongful termination of ERISA welfare benefits under 29 U.S.C. §§ 1132(a)(1)(B) & (a)(3). (*See* D.I. 4 at ¶¶ 39, 45). The Court will analyze these counts in reverse order.

#### 1. ERISA Claim

"ERISA is a comprehensive statute for the regulation of employee benefit plans[.]" *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 573 (3d Cir. 2006). It "recognizes two types of employee benefit plans: pension plans and welfare plans." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 137 (3d Cir. 1999). UAW's Complaint alleges that the plans at issue are "employee welfare benefit plans, as defined in ERISA, 29 U.S.C. § 1002(1)[.]" (D.I. 4 at ¶ 13).

"ERISA exempts severance and other welfare benefit plans from its vesting requirements, so that benefits offered under such plans are typically unaccrued and nonvested." *Hooven*, 465 F.3d at 574 (citing 29 U.S.C. § 1051(1)). "ERISA . . . does not require automatic vesting of welfare benefit plans." *Skinner Engine Co.*, 188 F.3d at 137–38. Consequently, "[e]mployers or

13

other plan sponsors are generally free under ERISA, for any reason and at any time, to adopt, modify or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). The employer can forego this right by "offer[ing] accrued or vested severance benefits, or cede its freedom to amend or cancel a welfare benefit plan, through the terms of the plan itself." *Hooven*, 465 F.3d at 574–75.

In order to maintain a claim under ERISA for wrongful termination of other welfare benefits, UAW "must demonstrate that the benefits are actually due; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Id.*; *see* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought–(1) by a participant or beneficiary– . . . (B) to recover benefits due to him under the terms of his plan."). Because "[b]enefits must have vested in order to be legally due[,]" a wrongful termination of other welfare benefits claim cannot survive if those benefits have not vested. *Hooven*, 465 F.3d at 574. The Court accepts the preclusive effect of the Bankruptcy Court's determination that the OPEB were not vested; consequently, ERISA does not prevent Visteon from unilaterally terminating those benefits. UAW's claim for a violation of 29 U.S.C. § 1132(a)(1)(B) fails as a matter of law.

### 2. Breach of Contract

UAW's breach of contract claim suffers a similar fate. (*See* D.I. 4 at ¶ 39). The Third Circuit has explained that it is a "fundamental premise [that] every claim for relief involving an ERISA plan must be analyzed within the framework of ERISA." *Hooven*, 465 F.3d at 573. "Unilateral contract principles may not operate to create extra-ERISA causes of action for plan benefits." *Id.* Instead, "the asserted unilateral contract is based on the explicit promises found in the ERISA plan documents themselves." *Id.* (quoting *Carr v. First Nationwide Bank*, 816 F. Supp. 1476, 1492 (N.D. Cal. 1993)).

14

Vesting occurs "[w]here the plan provides that an employee is irrevocably entitled to a certain benefit, and where all of the conditions precedent to the employee's receipt of that benefit have been satisfied." *Hooven*, 465 F.3d at 575. Therefore, if plan benefits are not vested, the beneficiaries cannot argue that the ERISA plans in question provided explicit promises that could give rise to a breach of contract claim. *See Lewis v. Allegheny Ludlum Corp.*, 579 F. App'x 116, 120 (3d Cir. 2014) ("In sum, Plaintiffs have not identified any clear and express language that vests their health benefits, and therefore their breach of contract claims were appropriately dismissed."). If an "[ERISA] benefit was not vested . . . [the employer] could terminate it. . . . For the same reasons, we conclude that no unilateral contract binds [the employer] to providing the pensioner [ERISA] benefit." *In re Lucent Death Benefits ERISA Litig.*, 541 F.3d 250, 257 (3d Cir. 2008). Since the Court accepts the Bankruptcy Court's finding that the OPEB were not vested, UAW's breach of contract claim fails as a matter of law.

UAW has no cause of action against Visteon for a breach of contract or a violation of ERISA, even when viewing the facts and inferences in the light most favorable to UAW. Accordingly, Visteon has demonstrated that it is entitled to judgment on the pleadings.

## V. CONCLUSION

For the reasons above, the Court will grant Visteon's Motion for Judgment on the Pleadings (D.I. 90). An appropriate order will enter.

15